**BEST LOCK CORPORATION,**
Appellant (Employer Below),

v.

**REVIEW BOARD OF the INDIANA DE-
PARTMENT OF EMPLOYMENT AND
TRAINING SERVICES,** Michael K.
Bonnell, Joe A. Harris and George H.
Baker, as members of and consulting
the Review Board of the Indiana De-
partment of Employment and Training
Services and,

**Daniel C. Winn,** Appellee
(Claimant Below).

No. 93A02–9009–EX–540.

Court of Appeals of Indiana,
Fourth District.

June 4, 1991.

Jack H. Rogers, Clare M. Sproule, Barnes & Thornburg, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Appellant Best Lock Corporation has a company rule which prohibits the use of tobacco, alcohol and drugs both while at work and away from work (the TAD rule). Five-year employee Daniel Winn admitted drinking at a bar and was fired for violating Best Lock's rule. He claimed unemployment compensation on the basis there was no just cause for his firing. The Review Board of the Indiana Department of Employment and Training Services (Review Board) agreed, and Best Lock appeals, claiming that: 1) contrary to a finding by the Review Board, it presented evidence that its TAD rule was reasonable; and 2) the Review Board abused its discretion by denying Best Lock's request for leave to submit additional evidence to the Board.

We affirm, finding that Best Lock failed to present evidence that there was any connection between the TAD rule and Best Lock's business interest, and that the Review Board did not abuse its discretion by denying Best Lock's request to submit additional evidence to the Board.

FACTS

Best Lock's TAD rule provides as follows:

> "The use of tobacco, the use of alcohol as a beverage, or the use of drugs by an employee shall not be condoned. 'Drugs' is herein defined as: Marijuana and other type of drugs, except those legally sold without a prescription and drugs taken under a medical doctor's prescription. Any employee violating this policy, at work or away from the plant, will be summarily terminated."

The rule is contained in the Employee Handbook which is given to all employees when they begin working.

Daniel Winn started working for Best Lock in September, 1984. He stated on his job application that he did not drink alcohol and that he agreed to abide by the TAD rule. He also signed a receipt indicating that he had received and read the employee handbook in which the rule was contained. On December 5, 1989, Winn testified on behalf of his brother-in-law (a former Best Lock employee who had also been discharged for violating the TAD rule) in an unfair labor practices hearing before the National Labor Relation Board. During his testimony, he stated he had been drinking on several occasions four years earlier in the period between December, 1985, and February, 1986. Winn was discharged on December 26, 1989.

The claims deputy determined that Winn was not disqualified from receiving unemployment benefits because he was not discharged for just cause. Best Lock appealed the decision to the appeals referee, who affirmed the Deputy's decision. Best Lock then appealed to the Review Board. In affirming the referee's decision, the Board

adopted the referee's findings of fact as follows (relevant part):

"Based on the evidence presented at the hearing, the referee makes the following findings of fact. The claimant started employment with this employer on or about September 10, 1984. He was assigned to do setup work. His last day of employment was on or about December 26, 1989. The claimant was discharged because his employer learned that on occasion during 1985 and 1986, the claimant drank alcohol, although the claimant realized that this employer's rules provide for discharge of any employee management discovers drank alcohol while in its employ.

"No evidence was presented at the hearing that the claimant drank alcohol on company premises or during working hours, or reported to work under the influence of alcohol. Furthermore, there is no evidence that the claimant ever violated any alcoholic beverage statutes or regulations.

"When the claimant was hired, he did state on the job application that he did not drink alcohol, and he realized that one of the terms of his hire was that he not do that. However, *no evidence was presented at the hearing that such rule is reasonable or necessary for proper conduct or production at work.* The claimant did not refuse to obey any instructions or rules that were work related.

"*CONCLUSIONS OF LAW:* From the foregoing findings, it is concluded that the claimant was discharged, but not for just cause in connection with the work. There is not sufficient evidence of probative value that the claimant was guilty of any of the offenses defined as just cause

for discharge by Chapter 15–1 of the Indiana Employment & Training Services Act. Furthermore, there is not sufficient evidence of probative value that the claimant was guilty of any other willful and wanton act or omission which deprived this employer of services reasonably owed it."

(R. 10–11, emphasis supplied).

## DISCUSSION AND DECISION

We first note our standard of review. When reviewing a decision by the Review Board, we must determine whether the decision of the Board is reasonable in light of its findings. *Blackwell v. Review Board of Ind. Dep't of Employment and Training Serv.* (1990), Ind.App., 560 N.E.2d 674. We may only examine the evidence and reasonable inferences drawn therefrom which would support the Board's decision. *Id.* We must accept the facts as found by the Review Board unless its findings fall within one of the exceptions for which this court may reverse. One of those exceptions is if the Review Board ignored competent evidence.[1] *Id.* Further, this court may reverse the Review Board's decision if reasonable persons would be bound to reach a conclusion different than that reached by the Board based on the evidence before the Board. *Ryan v. Review Board of Ind. Dep't of Employment and Training Serv.* (1990), Ind.App., 560 N.E.2d 112, 114.

### I. Sufficiency of the Evidence

Best Lock first argues that the Board erred as a matter of law in concluding Winn was discharged for just cause because reasonable persons would be bound to reach a conclusion different than

---

1. The exceptions are listed in *Blackwell v. Review Board* (1990), Ind.App., 560 N.E.2d 674, as follows:

" '(1) The evidence on which the Review Board based its finding was devoid of probative value;
(2) The quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis;

(3) The result of the hearing before the Review Board was substantially influenced by improper considerations;
(4) There was not substantial evidence supporting the findings of the Review Board;
(5) The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary.' "
*Id.* at 677, quoting *Shortridge v. Review Board of the Indiana Employment Security Div.* (1986), Ind.App., 498 N.E.2d 82, 87.

that made by the Board based on the evidence before it.

"Just cause" is defined in Ind.Code § 22–4–15–1(d) as follows (relevant part): " 'Discharge for just cause' as used in this section is defined to include but not be limited to:

> (2) Knowing violation of a *reasonable* and uniformly enforced rule of an employer." (emphasis added).

The burden was on Best Lock to establish a *prima facie* showing of just cause for termination. *Hehr v. Review Board of Ind. Employment Security Div.* (1989), Ind.App., 534 N.E.2d 1122, 1124. Here, that means that the burden was on Best Lock to show that Winn knowingly violated the TAD rule, that the rule was reasonable and that the rule was uniformly enforced. If that had been done, the burden would have been shifted to Winn to introduce evidence to rebut Best Lock's case. *Id.*

Best Lock argues that it met its burden of establishing a *prima facie* case by presenting evidence on all of these issues. The Review Board does not contest the issue of whether Best Lock established Winn knowingly violated the rule or that the rule is uniformly enforced. (The referee's findings and conclusions addressed the fact that Winn violated the rule but were silent as to whether the rule was uniformly enforced). Rather, the Board argues that Best Lock failed to show the TAD rule was reasonable. Thus, the reasonableness question remains for our examination. Before answering this question, however, it is necessary to examine what evidence would have been necessary to make a *prima facie* showing that such a rule was reasonable.[2]

In *Jeffboat, Inc., v. Review Board of the Ind. Employment Security Div.* (1984), Ind.App., 464 N.E.2d 377, we held that the employer's Absentee Control Program was reasonable because it protected the "interest of the employer by providing protection from an employee who abuses the Program …". Thus, we have held that a rule which regulates an employee's *on-duty* activities and which protects the interest of the employer is reasonable. In *Jeffboat,* however, the rule governed on-duty activities whereas the rule at issue here governed employees' off-duty as well as on-duty activities.

It has been said that when a rule purports to govern employees' off-duty activities, the conduct regulated must bear some relationship with the employer's business interest in order for the rule to be considered reasonable:

> "A rule laid down by the employer governing off-duty conduct of his employees must have a reasonable relationship to the employer's interests in order that violation thereof will constitute misconduct barring eligibility for unemployment compensation benefits. The question of the reasonableness of such a rule is to be tested by the rule's relationship

---

**2.** With respect to the prohibition of the use of tobacco outside the workplace, we note that the Governor of Indiana recently signed into law HEA No. 1439, which provides as follows:

Off Duty Use of Tobacco by Employee

Sec. 1. An employer may not:
(1) require, as a condition of employment, an employee or prospective employee to refrain from using; or
(2) discriminate against an employee with respect to:
(A) the employee's compensation and benefits; or
(B) terms and conditions of employment; based on the employee's use of; tobacco products outside the course of the employee's or prospective employee's employment.

Sec. 2 (a) An employee or prospective employee may bring a civil action against an employer to enforce section 1 of this chapter.

(b) If an employer violates section 1 of this chapter, the court may do the following:
(1) Award:
(A) actual damages; and
(B) court costs and reasonable attorney's fees;
to the prevailing employee or prospective employee.
(2) Enjoin further violation of this chapter.

Sec. 3. This chapter does not limit an employee's or prospective employee's rights or remedies under any other state or federal law

Sec. 4. This chapter does not apply to an employer that is:
(1) a church;
(2) a religious organization; or
(3) a school or business conducted by a church or religious organization.

to the business interests of the employer at the time of the making of the rule, rather than at the time of the employee's violation thereof. A rule of this type may be regarded as reasonable where a violation is reasonably likely to harm the employer's business interest, even though the actual violation does not result in actual harm to the business interests of the employer."

76 Am.Jur.2d *Unemployment Compensation* § 57 (1975) (emphasis supplied). *See also* 81 C.J.S. *Social Security* § 224 (1977).

There are no Indiana cases discussing this particular question. However, there are cases from other jurisdictions which merit discussion. In *Gregory v. Anderson* (1961), 14 Wis.2d 130, 109 N.W.2d 675, Gregory was in the business of selling and servicing vending machines and he employed truck drivers to service the machines, including those located in taverns. Because his business involved servicing of taverns, Gregory had difficulty obtaining insurance for his vehicles. Finally, an agent, whom Gregory contacted and who was impressed with the fact that Gregory enforced a rule against any drinking on the part of his employees, obtained insurance for Gregory. In his testimony, this agent stated that Gregory's rule against employees drinking was probably a decisive factor in inducing an insurance company to insure Gregory's vehicles. Anderson, one of Gregory's employees, was hired to service cigarette vending machines. He was informed of the rule and was told that such a rule was necessary for Gregory to be able to maintain insurance. Before starting to work for Gregory, Anderson agreed in writing to obey the rule. Anderson also stated he understood that the rule was necessary for Gregory to be able to maintain insurance. While employed by Gregory—but not on-duty—Anderson was arrested for driving a motor vehicle while intoxicated. After consulting his insurance agent, Gregory decided not to fire Anderson but to give him one more chance. Anderson was then told he would be fired if he drank again. About a year later, Anderson admitted to off-duty drinking and was discharged. The issue before the Wisconsin Supreme Court was whether Anderson was discharged for misconduct connected with his employment so as to bar him from unemployment compensation benefits. Under Wisconsin law, in order for a violation of an employer rule to constitute misconduct under the statute, the rule must be a reasonable one. The court stated:

"In order for violation of a rule laid down by the employer to constitute misconduct under such statute, such rule must be a reasonable one. *When such rule relates to conduct of the employee during off-duty hours, it must bear a reasonable relationship to the employer's interests in order to be reasonable.*"

109 N.W.2d at 679 (emphasis added). The court held that because Gregory might have lost his insurance coverage by virtue of Anderson's actions, the rule was reasonably related to a business interest of the employer and was therefore reasonable.

In *Olson v. Job Serv. of North Dakota* (1985), N.D., 379 N.W.2d 285, Olson was denied unemployment benefits because she was discharged for consuming alcoholic beverages off-duty, in violation of an agreement she had made with her employer. Olson appealed. On appeal, Job Service cited *Gregory, supra,* in support of its position that Olson should be denied benefits. The court held that to deny Olson benefits for off-duty conduct, the employer would have to show that such conduct posed a threat to the employer's business interest. Because there was no evidence that such a threat existed, Olson could not be denied benefits.

Although we are not bound by the above authority, we find it to be persuasive. The wording of the Wisconsin and North Dakota Unemployment Compensation statutes varies slightly from our statute; however, the question in both *Gregory* and *Olson* was whether the rule was reasonable, and we agree with the analysis by the courts in those cases. An employer has a high stake in regulating an employee's on-the-job conduct. The employer may want to closely regulate his employee's actions while at work to obtain

maximum efficiency on the job and to assure safety of the personnel. Accidents occur at work and the employer has an interest in minimizing those accidents for the sake of his employees as well as for the sake of his own liability insurance. However, the same interest does not always exist in regulating the employee's off-duty conduct. Therefore, we agree that in order for an employer rule which regulates an employee's off-duty activity to be considered reasonable, the activity sought to be regulated must bear some reasonable relationship to the employer's business interest. Thus, the burden was on Best Lock to present *prima facie* evidence at the hearing that the TAD rule was reasonably related to its business interest.[3]

Here, Best Lock argues that reasonable persons would be bound by the evidence to conclude that the TAD rule is reasonable. It refers specifically to the testimony of David Walker, a Personnel Manager at Best Lock and, also, its Exhibits Nos. 4–7.

When asked about the reason for the rule, Mr. Walker stated:

"Just a rule that exists, I think you'll find in some of the evidence [that] has been submitted, the reason basically has been determined at the time it was instituted by Frank Best it was a dislike or, of tobacco smoke in general."

(R. 20).

Exhibit No. 4 is a copy of the recommended findings of fact, conclusions of law and order by the Indiana Civil Rights Commission, stemming from a case between Michael Neese and Best Lock. Neese was discharged from Best Lock on March 23, 1984, for violation of the same rule at issue in this case. Neese then filed a complaint against Best Lock with the ICRC, alleging that it committed unlawful discrimination of religion. The Hearing Officer concluded that Neese failed to prove his allegations by a preponderance of the evidence. In its findings of fact, the commission found that rule was adopted because Frank Best, the founder of Best Lock, did not like the smell of smoke or being around one who smoked and that the rule was not based on religious reasons.

Exhibit No. 5 is a letter from the National Labor Relations Board, dated April 30, 1990, to Janice Kreuscher. Although it is unclear from the record, the letter was apparently sent in response to a complaint filed by Kreuscher on behalf of Winn with the NLRB against Best Lock. The letter states in pertinent part:

"Dear Ms. Kreuscher:

"The above-captioned case charging a violation under Section 8 of the National Labor Relations Act, as amended, has been carefully investigated and considered.

"As a result of the investigation, it does not appear that further proceedings on the charge are warranted inasmuch as

---

**3.** Best Lock cites *Grusendorf v. City of Oklahoma City* (10th Cir.1987), 816 F.2d 539, as standing for the proposition that non-smoking rules are reasonable. Grusendorf, a firefighter trainee, challenged the constitutionality of a regulation that prohibited smoking on and off the job for one year after taking a position with the fire department. He argued that, by virtue of the rule, the government—Oklahoma City—impermissibly infringed upon its employees' freedom of choice in personal matters that were unrelated to the performance of any of his duties. The court held that there is a liberty interest within the fourteenth amendment that protects the right of firefighter trainees to smoke when off-duty. However, the court held that because of the "heightened interest the state government has in regulating the firefighters by virtue of being their employer" it would extend to the non-smoking regulation a presumption of validity. The court went on to find that there was a rational connection between the non-smoking regulation and the promotion of health and safety of the firefighter trainees. The court further recognized the importance of good health and physical conditioning for firefighters. The court concluded that these factors were sufficient to establish, *prima facie*, a rational basis for the regulation. Because Grusendorf did not raise any argument that the regulation was irrational, he failed to overcome the City's *prima facie* case.

The *Grusendorf* court was faced with a constitutional challenge; therefore, it started with the presumption that rule was valid, thereby shifting the burden of proof away from the city to Grusendorf. In this action before the Review Board, however, there is no presumption of validity and the burden is on the employer, not the employee, to establish that the rule is reasonable. Thus, the *Grusendorf* decision is not controlling.

there is insufficient evidence of violation. I am, therefore, refusing to issue complaint in this matter.

"Pursuant to the National Labor Relation Board Rules and Regulations, Series 8, as amended, you may obtain a review of this action according to the enclosed instructions. This appeal must be received by the close of business on or before May 14, 1990."

(R. 50–51).

Exhibit 6 is a copy of a determination by the Equal Employment Opportunity Commission in a case filed by Thomas Gipe, a former Best Lock employee, charging that he was discriminated against in violation of Title VII. The EEOC's determination provides in relevant part:

"Examination of the evidence indicates that [Gipe] was discharged because he violated a known policy which prohibits the drinking of alcoholic beverages both on and off the job. Investigation reveals that in most cases, once [Best Lock] becomes aware of any employee who violates its policy which prohibits the use of alcohol, tobacco or drugs, both on and off the premises, that employee is discharged, in accordance with its policy. *[Best Lock] has substantiated its position for prohibiting these practices with documentation which reveals business related reasons, other than religion or expectations of living a Christian lifestyle.* Based on this analysis, I have determined that the evidence obtained during the investigation does not establish a violation of the statute."

(R. 54–57, emphasis supplied).

Finally, Exhibit No. 7 is a decision issued by the National Labor Relations Board Division of Judges in an action also brought by Thomas Gipe, who alleged he was fired because he campaigned among Best Lock's employees on behalf of several unions and because he filed affidavits with the Board concerning unfair labor practice charges against Best Lock. Best Lock argued that Gipe was fired because he violated its TAD rule, as evidenced by his arrests for driving while intoxicated. In finding in favor of Best Lock that Gipe was fired because he

violated the TAD rule and not because of his union activities, the Board found, in part:

"BLC was founded by Frank Best, who first put into place something akin to the TAD rule. Frank's son Walter now heads the Company. And to Walter the TAD rule is a serious and important matter. As a result, at least since 1966 (when Walter took over), BLC has flatly refused to hire any job applicant who admitted to drinking alcoholic beverages or using tobacco.

"As for action against an employee whom the Company learns is violating the TAD rule, however, matters are somewhat less straight-forward.

"On the one hand, the record is clear that at least some BLC supervisors take the TAD rule at face value. If one of such supervisors sees an employee violating the TAD rule (even in as a relatively innocuous way as smoking a cigarette outside the plant), or if an employee admits to such a supervisor that the employee has violated the TAD rule, BLC will forthwith fire the employee. Thus BLC has fired employees who admitted smoking cigarettes, even though those employees did so only away from the plant.

"On the other hand, the record suggests that Company generally will not act against an employee if the Company's sole information about a violation of the TAD rule is a statement by another employee. (One apparent exception: When the Company got wind of drug dealing by a couple of its employees, it hired an investigating company to look into the matter. That ultimately resulted in the discharge of the employees).

"Lastly, in a few instance BLC refused to act against longtime employees even though their violations of the rules were obvious. The most blatant example was employee Roy Rigney's cigarette smoking. Everyone at BLC knew that Rigney smoked. But he had been employed by BLC since the 1940's and the Company

limited its action against him to telling him to be discrete about it."[4] (R. 63). While not deciding exactly what evidence—or how much—is necessary to make a *prima facie* showing that an employer's rule regulating an employee's off-duty activities is reasonable, we cannot agree with Best Lock's argument that reasonable persons would be bound by this evidence to conclude that the TAD rule is reasonable.

We do note that in its brief, Best Lock suggests that the fact that no evidence was presented to rebut its evidence is material to its argument. We remind Best Lock that it alleged Winn was fired for violating the TAD rule. Therefore, the burden was upon it to show that Winn knowingly violated a reasonable rule which is uniformly enforced. This it failed to do.

■ Best Lock also claims that the Review Board's decision should be reversed because the Board failed to consider competent evidence. It argues that the other agencies' decisions should have been considered by the Board because each of the agencies that reviewed the TAD rule "received evidence as to the Company's justification for and application of the rule in that case." (Appellant's Brief, p. 18). Best Lock points in particular to the EEOC determination that its investigation revealed no violation of Title VII of the Civil Rights Act of 1964 had occurred with regard to Thomas Gipe's firing as evidence that the TAD rule was reasonable. In this Determination—submitted by Best Lock as Exhibit 6 and quoted in relevant part above—the EEOC stated that Best Lock "has substantiated its position for prohibiting these practices with documentation which reveals business related reasons, other than reli-

gion or expectations of living a Christian lifestyle." (R. 52). This statement is merely evidence that during the EEOC's investigation, Best Lock submitted documentation that its rule had a business related reason, and was not based totally on religious beliefs. There is no indication of what that evidence was, nor was the same evidence submitted to the appeals referee in the case before us. We also note that the EEOC did not determine that the TAD rule was reasonable. For that matter, none of the other agencies made this determination. As a matter of fact, the Civil Rights Commission found that the rule was based "not on religious principles, but on Frank's dislike of the smell of smoke." (R. 58).

In short, we do not agree with Best Lock's argument that the Review Board ignored competent evidence in finding that there was no evidence to support the rule's reasonableness.

■ Best Lock also argues that the evidence was competent evidence because there is a presumption that agency decisions are based on a set of facts that validate their orders. The company cites *Citizens to Preserve Overton Park v. Volpe* (1971), 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136; *Thompson v. Consolidated Gas Utilities Corp.* (1937), 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510; *Pacific States Box & Basket Co. v. White* (1935), 296 U.S. 176, 56 S.Ct. 159, 82 L.Ed. 138; *Telegraph Savings and Loan Assoc. v. Federal Savings and Loan Insurance Corp.* (N.D.Ill.1981), 564 F.Supp. 862, in support of its argument. These cases, however, stand for the proposition that *regulations* passed by the agency are afforded a presumption of validity, and the burden is on the party chal-

---

**4.** We have already stated that the burden was on Best Lock to show that Winn knowingly violated the TAD rule, the rule was reasonable and *the rule was uniformly enforced.* It is obvious that the issue of uniform enforcement was addressed in Exhibit 7.

Best Lock insists that the referee was bound by the findings and conclusions reached by the various agencies to find that its rule was reasonable. Logically, then, the referee also had a reasonable basis to find the rule was *not* uniformly enforced based on the content of Exhibit

**7.** However, the referee made no finding with respect to the uniform enforcement of this rule. The personnel manager of Best Lock did testify that Best Lock discharged employees who admitted that they had violated the rule or whose violation of the rule was verified by evidence independent of an uncorroborated report or testimony of a fellow employee. This testimony is similar to some of the information contained in Exhibit 7, however, the personnel manager did not mention the "longtime employee" exception as revealed by exhibit 7.

lenging the regulation to prove that it is invalid. This presumption of validity is akin to the presumption of validity afforded to legislative actions. However, there is nothing in the above-cited authority indicating that the same presumption is afforded to *rulings* by agencies.

■ Best Lock also argues that this court should review the evidence and reach its own conclusion on the issue of whether its rule was reasonable. It argues that there is sufficient evidence in the record for this court to find that Best Lock has business justifications for its rule and that the rule is reasonable as matter of law.

This argument fails for two reasons. First, we find no error in the Board's decision and therefore have no basis for reversing its decision. Secondly, Best Lock supports this argument with evidence not in the record. For example, it argues that Best Lock's medical insurance costs are extremely low as a result of its policy against the use of alcohol, tobacco and drugs by its employees. It also points to "overwhelming evidence that show there is a direct relationship between high medical insurance costs, on the job injuries, increased absenteeism and tardiness, and an employee's use of alcohol, tobacco and/or drugs." Appellant's Brief, p. 20. This evidence was not a part of the record and is therefore not properly before this court.[5]

## II. *Additional Evidence Offered by Best Lock to the Review Board*

■ Best Lock also argues that the Review Board abused its discretion by refusing to accept additional evidence it submitted. Best Lock applied for leave to introduce additional documentary evidence to the Review Board after the appeals referee issued her opinion. Attached to Best Lock's application for leave to introduce this evidence was a list of titles of fourteen documents and articles it sought to introduce; however, no copies of the documents were attached to the application. The Board argues that Best Lock has waived this issue by failing to follow proper statutory procedures for submitting additional evidence to the Board.

The decision to accept additional evidence is a discretionary matter for the Review Board. *Whirlpool Corp. v. Review Board of Ind. Employment Security Div.* (1982), Ind.App., 438 N.E.2d 775; *Alcoa v. Review Board of Ind. Employment Security Div.* (1981), Ind.App., 426 N.E.2d 54, *trans. denied.* The submission of additional evidence to the Board is governed by 640 IAC 1–11–8, which provides in part:

"Each hearing before the Review Board shall be confined to the evidence submitted before the referee unless the

---

5. On January 28, 1991, after filing its Reply Brief, Best Lock sought Leave to file attachments to its Reply Brief, which this court denied. The attachments are various articles on the impact of alcohol and drug abuse on insurance costs and business costs in general. Best Lock cites these articles in its Reply Brief as support for its position that there is a valid business reason for its TAD rule. Appellant's Reply Br. 10–13. The Review Board moved to strike pages 11 and 12 of the Reply Brief as well as all of the attachments thereto.

We agree with the Review Board that the attachments were submitted as additional evidence to this court. Best Lock even admits in its reply brief that it submits the evidence to "attempt to persuade this court that its tobacco, alcohol and drug rule is reasonable". (Reply Brief 12). Therefore, we will not consider this evidence in reaching our decision here today.

Best Lock, in effect, has asked this court to take judicial notice of the facts presented in its evidence. A situation similar to this was presented to this court in *Stewart v. Stewart*

(1988), Ind.App., 521 N.E.2d 956. There, we stated:

"Facts that are judicially noted must be generally known or capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned. *Prestige Homes, Inc. v. Legouffe* (1983), Colo., 658 P.2d 850, 853. Judicial notice has traditionally been used cautiously and only when the facts judicially noted cannot reasonably be disputed. Judicial notice may not be used on appeal to fill gaps in the evidence. *City of New Brunswick v. Borough of Milltown* (3rd. Cir.1982), 686 F.2d 120, 131, n. 15."

*Id.* at 959, n. 2. A review of the attachments here reveals that the materials can reasonably be disputed. Further, Best Lock attempts to fill in gaps in the evidence on appeal by now trying to submit evidence that there is a connection between its TAD rule and its business interest. Thus, we decline to consider the attachments as well as the argument in the reply brief which refers to those attachments.

same is an original hearing. Provided, however, the Review Board may hear or procure additional evidence upon its own motion, *or upon written application with a showing of good reason why such additional evidence was not procured and introduced at that hearing before the referee whose decision forms the basis of the appeal.... If the new evidence be documentary, then a copy of the document proposed to be introduced shall accompany the application.*"

(Emphasis supplied).

Best Lock alleged in its application for leave to introduce the addition evidence (and argues here on appeal) that the evidence was not originally introduced at the hearing because

"there was no indication that the rule itself was ever going to be challenged or that there would be a need to substantiate the validity of the rule, especially since, common knowledge would indicate such a rule would have a direct impact on cutting a company's business costs. Also the rule had been upheld as to its validity by both the EEOC and NLRB."

(R. 4). The Review Board rejected the evidence because "there was no showing that said evidence was unavailable at the time of the Administrative Law Judge hearing or that any of its rights have been denied." (R. 8).

We note initially that 640 IAC 1–11–8 clearly requires the party seeking to introduce additional evidence to the Board to attach copies of documentary evidence to its application. Best Lock attached only the titles of the articles and not a copy of the articles themselves—thereby failing to follow the proper procedures for the submission of additional evidence to the Board. In *Ladd v. Review Board of the Ind. Employment Security Div.* (1971), 150 Ind. App. 632, 276 N.E.2d 871, we held that failure to follow these procedures will result in waiver of the issue of whether the Board abused its discretion in not permitting the submission of additional evidence. Thus, Best Lock has waived this issue.

█ Secondly, even if Best Lock had not waived the issue, we find the Board did not abuse its discretion. The Board rejected Best Lock's evidence because it failed to show good cause why the evidence was not introduced at the hearing before the referee. Best Lock itself made the rule in issue by alleging that Winn was discharged for breaking a company rule. As we have already stated—and as Best Lock admits in its brief—the burden was on it to show that there was a willful violation of a reasonable, uniformly enforced company rule. It cannot now say that it had no idea that the rule would be challenged.

█ Best Lock also argues the evidence should have been permitted because the appeals referee failed in her duty to develop an adequate record, citing *Thomas v. Review Board of the Dep't of Employment and Training Serv.* (1989), Ind.App., 543 N.E.2d 397. This argument was not made to the Review Board. Furthermore, we agree that when an unemployment compensation claimant appeals *pro se* the denial of unemployment compensation, it is the referee's duty to " 'insure a complete presentation of [the claimant's] case at the review hearing.' " *Id.* at 400, quoting *Flick v. Review Board of the Ind. Employment Security Div.* (1982), Ind.App., 443 N.E.2d 84, 86. This duty is imposed by 640 IAC 1–11–3, which provides in part:

"Where either party fails to appear or where either party *is not represented* by an attorney or *duly authorized agent,* it shall be the duty of the referee to examine such party's witnesses, and to cross examine all witnesses of the other party, in order to insure complete presentation of the case."

(emphasis supplied). However, this rule is inapplicable because Best Lock was represented by David Walker, a personnel manager. As such, he was a duly authorized agent of Best Lock and it was up to him to present Best Lock's case.

In addition, an examination of the record reveals that the referee questioned Walker extensively as to the events surrounding Winn's discharge and the rule at issue. At the end of her questioning, she asked Walker on four separate occasions if he had anything else to add to his testimony; thereby permitting Walker to introduce evi-

**530**

dence on the rule's reasonableness. The referee cannot be faulted for failing to *sua sponte* discover additional evidence in favor of Best Lock's case.

Finally, Best Lock argues that it cannot be faulted for "failing to introduce the substantial amount of evidence that it had on its business justification for the rule since other agencies had already considered such evidence and concluded the rule was reasonable." (Appellant's Brief, p. 26). Once again, the burden was on Best Lock to show that its rule was reasonable. If it had additional evidence to support its position that the rule was reasonable, it should have presented that evidence to the trier of fact.

In summary, we find no abuse of discretion in the Review Board's decision to deny Best Lock's application to submit additional evidence. The decision of the Review Board is hereby affirmed in all aspects.

CONOVER, J., concurs.

CHEZEM, J., concurring in result.