**GENERAL MOTORS CORPORATION,**
Appellant–Respondent,

v.

**REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT,** Mable Martin–Scott, George H. Baker, and Mark T. Robbins as Members of and as constituting the Review Board of the Indiana Department of Workforce Development and Derick R. Franklin, Appellees–Claimant.

No. 93A02–9603–EX–181.

Court of Appeals of Indiana.

Oct. 18, 1996.

Linda L. Pence, Jane Ann Himsel, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, for Appellant–Respondent.

## OPINION

KIRSCH, Judge.

The Allison Transmission Division of General Motors Corporation (GM) appeals the decision of the Review Board of the Indiana Department of Workforce Development (Review Board) determining that Derick R. Franklin (Franklin), a former GM employee, was not discharged for just cause and was eligible for unemployment benefits. Because we find it dispositive, we address only the following issue: Whether there was substantial evidence to support the Review Board's decision that GM discharged Franklin without just cause.

We reverse.

## FACTS AND PROCEDURAL HISTORY

Franklin was hired as a salaried employee of GM located in Indianapolis on September 29, 1975, and was assigned to work in the copy center. During Franklin's employment, GM instituted a drug and alcohol abuse policy (drug policy). The drug policy was published twice a year and posted throughout the GM plant in several locations including public traveled aisles, entrances and exits to the plant, and bulletin boards.

In 1993, GM employees alerted the corporation's management to possible drug and alcohol problems among some of its employees. In order to ascertain whether the drug and alcohol problems existed, GM began an undercover drug investigation in November 1993, which lasted for approximately fourteen months. GM hired the Asset Corporation (which conducts investigations into public as well as private workforces to detect different types of improper activity) to run the investigation, and Asset placed two undercover agents to pose as GM employees. As part of the investigation, the Asset agents provided GM with detailed, written reports describing drug-related activity.

The reports of one agent indicated that Franklin, on numerous occasions, sold and distributed illegal drugs. According to the reports, Franklin sold marijuana to the undercover agent on two occasions, supplied the agent with marijuana on one occasion, and supplied the agent with Darvocet and Valium (prescription drugs) on several other occasions. As a result of the drug investigation and the agent's reports, Franklin and fifteen other GM employees were arrested in April 1995. GM discharged all of the employees, including Franklin, for violating the corporation's drug policy.

After his termination, Franklin filed a claim for unemployment insurance benefits. A deputy of the Indiana Department of Workforce Development denied his claim. Franklin filed a timely Notice to Appeal the denial of benefits and requested a hearing before an Administrative Law Judge (referee). After conducting the hearing, the referee reversed the initial determination denying Franklin's benefits and found that Franklin was discharged without just cause and was entitled to benefits.

GM filed a Request for Appeal to the Review Board. The Review Board affirmed the referee's decision and adopted his findings of fact and conclusions of law which state in pertinent part:

"CONCLUSIONS OF LAW: .... In the present case, the claimant was discharged by the employer for violating the employer's written drug and alcohol abuse policy. This policy is published twice a year and posted in the employer's facilities. The only circumstance of drug trafficking at the employer's facility was that which gave rise to the investigation, and resulting discharge of the claimant. All employees of the employer implicated by the investigation were discharged by the employer. However, the employer has had other cases involving the use/possession of illegal drugs. With regard to violations of the employer's written drug and alcohol abuse policy, the decision to discipline offending employees, and the nature of the discipline to be imposed for such violations, is discretionary with the employer's management. The employer does have a progressive disciplinary policy; however, the use of this policy depends upon the situation involved, taking into consideration the disciplinary record of any employee found to be in violation of the policy. Therefore, the Administrative Law Judge cannot find the employer's drug and alcohol abuse policy

to be reasonable and uniformly enforced. As such, the employer has failed to sustain its burden of proof, and has failed to establish a prima facie showing of just cause for the discharge."

*Record* at 94–95.

## STANDARD OF REVIEW

■ When reviewing the Review Board's decision, this court accepts the factual findings as conclusive and binding. *Parkison v. James River Corp.*, 659 N.E.2d 690, 692 (Ind. Ct.App.1996). We then determine whether the Review Board's decision is supported by substantial evidence of probative value. *Id.* In so doing, we neither reweigh the evidence nor reassess witness credibility, and we consider only the evidence most favorable to the Review Board's decision. *Id.*

■ We must accept the facts as found by the Review Board unless its findings fall within one of the exceptions for which this court may reverse. *Best Lock Corp. v. Review Bd.*, 572 N.E.2d 520, 522 (Ind.Ct.App. 1991). The exceptions are as follows:

"(1) The evidence on which the Review Board based its findings was devoid of probative value;

(2) The quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis;

(3) The result of the hearing before the Review Board was substantially influenced by improper considerations;

(4) There was not substantial evidence supporting the findings of the Review Board;

(5) The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary."

*Blackwell v. Review Bd.*, 560 N.E.2d 674, 677 (Ind.Ct.App.1990). We will reverse the decision only if there is no substantial evidence to support the findings or if a reasonable person, considering only the evidence supporting those findings, would be bound to reach a different result. *KBI, Inc. v. Review Bd.*, 656 N.E.2d 842, 846 (Ind.Ct.App.1995).

## DISCUSSION AND DECISION

The Review Board found that GM's drug policy was not reasonable and uniformly enforced. On appeal, GM argues that there was no substantial evidence supporting the Review Board's conclusion and that a reasonable person would be compelled to reach the opposite conclusion. We agree.

■ Unemployment compensation may be denied to employees who are discharged for just cause. IC 22–4–15–1(d). Discharge for just cause includes a knowing violation of a reasonable and uniformly enforced rule of an employer. *KBI*, 656 N.E.2d at 847. It is the employer's burden to prove it had a uniformly enforced work rule and that the claimant knowingly violated the rule. *Id.* In determining here whether Franklin was discharged for just cause, we must determine whether there was substantial evidence to support the Review Board's conclusion that GM's drug policy was not reasonable and uniformly enforced.

GM's written drug policy which was introduced into evidence at the hearing before the referee states in its entirety that:

"[1] General Motors and Allison Transmission are committed to providing you with an alcohol and drug-free work environment. We abide by all federal legislation and regulations requiring a drug-free workplace and are committed to providing a safe work environment free from the effects of alcohol and drug abuse for all our employees.

[2] The Corporation recognizes employee involvement with alcohol and drugs, on or off the job, has the potential to impact the workplace. Under the provisions of the Employee Assistance Program, employees who *voluntarily request assistance in dealing with personal substance problems* may do so without jeopardizing their continued employment. However, as in the past, participation in the Employee Assistance Program *will not prevent disciplinary action for violation of this policy or the shop rules.*

[3] The illegal use, sale, possession, distribution, manufacture or dispensation of narcotics, drugs, or controlled substances

while on the job or in the workplace *is a dischargeable offense.*

[4] Employees who are under the influence of alcohol or other drugs, or who possess or consume alcohol or other drugs on the job, have the potential for interfering with their own, as well as their co-workers', safe and efficient job performance. Consistent with existing policies and shop rules, such behavior will be proper cause for disciplinary action up to and including termination of employment.

[5] Allison Transmission's continuing dedication to customer satisfaction in the increasingly competitive worldwide marketplace in which we operate requires that we maintain a drug-free work environment."

*Record* at 68 (emphases added).

■ A work rule is reasonable if it protects the interests of the employees as well as those of the employer. *Russell v. Review Bd.*, 586 N.E.2d 942, 949 (Ind.Ct.App.1992). Under GM's drug policy, the first paragraph states the policy's purpose. GM representative Tom Lacey testified at the hearing and reiterated that the purpose behind the drug policy was to provide employees with a safe workplace and ensure efficient job performance. GM had an interest in efficiently running its plant, and GM's drug policy effectively promoted this legitimate goal. Clearly, a private employer has the right to invoke a policy that insures that its workers are drug and alcohol free while on the job. *See Butler v. Review Bd.*, 633 N.E.2d 310, 313 (Ind.Ct.App.1994) (employer had a right to ensure that workers were drug and alcohol free while on the job).

The Review Board found GM's drug policy unreasonable. Although it is unclear from the Findings of Fact and Conclusions of Law, it appears that both the referee and the Review Board found GM's drug policy to be unreasonable because the decision to discipline the policy offenders and the extent of the discipline imposed was discretionary with GM management. The Review Board found the employer's rule was not uniformly enforced because GM did not automatically terminate employees who violated the drug policy by possessing illegal drugs on prior occasions but automatically terminated Franklin and the other employees found to be selling drugs. Considering only the evidence supporting the Board's findings, we are bound to reach the opposite result.

To establish just cause for discharge for the knowing violation of a reasonable rule, an employer must show that the rule was uniformly enforced. IC 22–4–15–1(d)(2). In the instant case, the evidence supporting the Review Board's findings reveals that Franklin was accused by GM of selling and distributing illegal drugs to an undercover agent on GM's premises. Franklin and the fifteen other employees implicated in the undercover investigation were arrested and removed from GM's premises. All the employees implicated in the investigation were discharged for violating GM's drug policy.

Although the instant case was the first known incident of drug trafficking at GM, the corporation's management had disciplined employees in the past for the use and possession of illegal drugs. The evidence discloses that when disciplining an employee for the use or possession of illegal drugs, GM management examined the past disciplinary record of the employee involved and based the penalty imposed on the past behavior. Thus, GM management disciplined drug users and possessors differently from drug traffickers. We do not find that GM's drug policy was not uniformly enforced, however, simply because GM management takes into consideration the past disciplinary history of those employees found to be using or possessing illegal drugs, yet automatically discharges those employees found to be selling illegal drugs on GM's premises.

■ IC 22–4–15–1(d) states that discharge for just cause includes the knowing violation of a reasonable and uniformly enforced rule of an employer; however, "uniformly enforced" is not defined in the statute. When interpreting a statute, the foremost objective is to determine and effect legislative intent. *Guzman v. AAA Auto Rental*, 654 N.E.2d 838, 840 (Ind.Ct.App.1995). Statutes must be construed to give effect to legislative intent, and courts must give deference to such intent whenever possible. *Id.*

Thus, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment. *Id.* Courts are to examine and interpret a statute as a whole, giving words common and ordinary meaning, and not overemphasizing a strict literal or selective reading of individual words. *Id.* Words and phrases are taken in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. *Id.*

■■■■ The purpose of the Unemployment Compensation Act is to provide benefits to those who are involuntarily out of work through no fault of their own, for reasons beyond their control. *Wasylk v. Review Bd.*, 454 N.E.2d 1243, 1245 (Ind.Ct.App. 1983). The purpose of unemployment compensation legislation is to enable unfortunate employees who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day. *Id.*

Black's Law Dictionary defines "uniform" as "conforming to one rule, mode, pattern, or unvarying standard; not different at different times or places ... applying alike to all within a class; sameness." *Black's Law Dictionary*, 6th Ed. (1990), p. 1530. *Black's* further states that:

"A statute is general and uniform in its operation when it operates equally upon all persons who are brought within the relations and circumstances provided for; when all persons under the same conditions and in the same circumstances are treated alike, and classification is reasonable and naturally inherent in the subject-matter."

*Id.* "Enforcement" is defined as "the act of putting something such as a law into effect; the execution of a law; the carrying out of a mandate or command." *Id.* at 528.

In *Citizens Gas and Coke Utility v. Review Bd.*, 471 N.E.2d 1175 (Ind.Ct.App.1984), though we did not define uniform enforcement, we affirmed the Review Board's finding that the employer did not carry its burden of proof that it uniformly enforced its work rule. *Id.* at 1178. Specifically, we found that where the employer stated that it was possible that other employees with attendance records worse than the offending employee's record were still employed, and where the employer also admitted that another employee dismissed for excessive absenteeism and tardiness had been reinstated, the employer failed to show that its attendance policy was uniformly enforced. *Id.* at 1177, 1178. *See also Russell v. Review Bd.*, 586 N.E.2d 942, 948 (Ind.Ct.App.1992) ("had [employee] been discharged, while her two companions ... were retained by [the company], a different case would be presented, seriously bringing [the company's] uniform enforcement of the rule into question.")

■■■■ Discharge for just cause includes the knowing violation of a reasonable and uniformly enforced rule of an employer. IC 22–4–15–1(d). Using the above definitions and applications, and giving the statute its plain, ordinary and usual meaning, we determine that a uniformly enforced rule is one that is carried out in such a way that all persons under the same conditions and in the same circumstances are treated alike.

■■■■ Here, Franklin and the other fifteen employees were all found to be drug traffickers, and were all terminated. Treating offenders who violate its policy by using or possessing illegal drugs differently from those offenders who violate the policy by selling illegal drugs does not mean that GM does not uniformly enforce its drug policy rules. The two classes of offenders are different, present different risks, and are treated differently under our criminal statutes.[1]

The evidence most favorable to the Review Board's decision established that GM man-

---

1. Under Indiana statutes, a defendant convicted for dealing in a controlled substance is subject to a harsher sentence than a defendant convicted for possession of a controlled substance. For example, IC 35–48–4–3 states that dealing in a schedule IV controlled substance is identified as a Class C felony punishable by up to five years imprisonment and a $10,000 fine, whereas IC 35–48–4–7 states that the possession of a schedule IV controlled substance is identified as a Class D felony punishable for up to two years imprisonment and a $10,000 fine.

agement examines the past disciplinary history of all employees who violate GM's drug policy by using or possessing illegal drugs. The evidence further established that although the drug-selling investigation involving Franklin and the fifteen other employees was the first known incident of drug trafficking at GM, all employees involved were discharged immediately. Under GM's drug policy, all employees who violate the policy are subject to discipline. GM consistently treated all offenders within the class of users alike and treated all offenders within the class of dealers alike.

Thus, in examining only the evidence and reasonable inferences therefrom which support the Board's findings we find that the Board's decision is not supported by substantial evidence. Reasonable persons would be bound to conclude that GM's drug policy was reasonable and uniformly enforced and that Franklin's violation of the drug policy by selling illegal drugs on company premises constituted just cause for his discharge. Therefore, we reverse and remand with instructions that Franklin's application for unemployment compensation be denied.

Reversed.

FRIEDLANDER and GARRARD, JJ., concur.