**Janice M. RUSSELL, Appellant–
Claimant,**

v.

**REVIEW BOARD OF the INDIANA DEPARTMENT OF EMPLOYMENT AND TRAINING SERVICES, and Michael K. Bonnell and George H. Baker, as Members of the Review Board, and Witt, Fiala, Flannery & Associates, Appellees–Respondents.**

No. 93A02–9107–EX–280.

Court of Appeals of Indiana,
First District.

Feb. 27, 1992.

Donald R. Lundberg, Indianapolis, Gregory L. Volz, Legal Services Organization of Indiana, Inc., Evansville, for appellant-claimant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for Review Bd. of Indiana Dept. of Employment and Training Services, and Michael K. Bonnell and George H. Baker, as Members of the Review Bd.

Thomas E. Berry, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, Mo., John S. Beeman, Douglas A. Tresslar, Harrison & Moberly, Indianapolis, for Witt, Fiala, Flannery & Associates.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Janice M. Russell ("Russell") appeals from a decision of the Review Board of the Indiana Department of Employment and Training Services ("Board"), in which it denied her claim for unemployment compensation benefits following her termination from employment at Witt, Fiala, Flannery & Associates ("Witt"). We affirm.

## ISSUES

We restate the issues on appeal as:

1. Did the Board err in making credibility determinations, and were such determinations the sole determinative factor in denying Russell benefits?

2. Was the Board's decision denying Russell unemployment compensation benefits contrary to law?

## FACTS[1]

In 1980, Russell began working as a custodian for the University of Evansville

---

1. This court does not appreciate appellee Witt's use of smaller pitch type in a forty-one (41) page brief with attachments ostensibly to circumvent the fifty (50) page brief limit. *See* Ind. Appel-

("University"). Russell's schedule for full-time employment was a shift that commenced at 7:00 a.m. and ended at 3:30 p.m.

In June of 1983, Witt assumed responsibility for the University's custodial services. Russell and other University custodial employees became Witt's employees. At the beginning of each shift, the custodial employees would "clock in" at Witt's office in the physical plant building on the University's campus. Then the employees went to their assigned buildings on the campus to begin their work. Russell and several other employees would customarily stop at the Shell service station ("Station") across the street from the campus on their way to their work site after "clocking in" to purchase snack items to eat on their morning break period. Russell asserts that Witt's management was aware of this practice.

Witt assigned its University account to Dave Druml ("Druml") in April of 1990. Druml's responsibilities included the supervision of the custodial employees and the promulgation of associated work rules. To manage this operation effectively, Druml believed that the employees should know what was expected of them. After learning that the employees' compliance with several company rules and regulations had been lax, Druml drafted a policy memo containing a number of new work rules. One of these rules ("Rule") prohibits employees from leaving the campus during their assigned shift without permission. This Rule reads in full:

"LEAVING ASSIGNED WORK SITE:
The following policy applies to all employees:
All employees who desire to leave Campus during their lunch period must clock out prior to leaving, and clock in upon return.

With the exception of lunch periods, no employee is authorized to leave Campus during their [sic] assigned shift without first obtaining permission from the Shift Leadperson or Manager. Leaving Campus without proper authorization during work hours shall constitute "Walking off the job", which is grounds for immediate termination of employment.

With the exception of the break and lunch periods, no employee shall be authorized to leave their [sic] assigned working area, unless authorized by the shift leadperson or manager, or if enroute to or from the WFF [Witt] Office located in the Physical Plant Building."
Record at 97.

On Friday morning, May 18, 1990, Druml conducted a meeting with the morning shift custodial employees, including Russell, to explain the new work rules. Druml gave each employee a copy of the new work rules. To make sure that the employees understood the rules, Druml read and explained each rule. He read each new rule "word for word." Record at 31, 38, 46. Then Druml provided the employees with an opportunity to ask questions about the new rules. Approximately two to three minutes were spent discussing the Rule. There is conflicting testimony regarding whether Druml specifically mentioned the Station when discussing the Rule. Russell admits that she basically understood the new rules and thus, asked no questions at the meeting. Record at 54–55.

On Monday morning, May 21, 1990, at about 7:05 a.m., Druml was inspecting a campus building when he observed a car pull into the Station. Druml recognized the car as belonging to one of Witt's custodial employees. Druml saw Russell and two other custodial employees exit the car and enter the Station. The three employees claim that several of Witt's other employees were leaving the Station's parking lot as they arrived at the Station; however, Druml stated that he did not see the other

late Rule 8.2(A)(1) and (4). We note that should the fifty (50) page standard brief limit not suffice to develop a party's argument, a petition to file a brief in excess of fifty (50) pages may be submitted. Ind. Appellate Rule 8.2(A)(4). We also agree with Russell that Witt's statement of the facts in its brief is unduly argumentative.

*See* Ind. Appellate Rule 8.3(A)(5) and (7). However, such marginal deviations from compliance with the appellate rules does not preclude our review. *See Lambert v. Farmers Bank* (1988), Ind.App., 519 N.E.2d 745, 747 (accumulation of errors does not necessarily thwart appellate review, and merits should be addressed).

employees. Record at 19–20. Approximately five minutes later, the three employees returned to the car and proceeded to their campus work location. Druml then checked the three employees' time cards. The cards showed that the employees had "clocked in" immediately before going to the Station. None of the three employees had requested permission to leave the campus that morning. Russell admits that she was at the Station buying a doughnut while "clocked in". Record at 47–48.

About noon that same day, Druml informed the three employees that he had seen them at the Station and that their actions violated the Rule. There is conflicting testimony regarding the employees' responses to the charge of violating the Rule. Druml stated that at that time, none of the employees offered any statement, defense, excuse, or justification for their actions. The employees contend, however, that they at that time asked Druml about the other two employees they saw at the Station the morning of May 21, 1990, who were ostensibly also violating the Rule. Druml advised them that a final decision regarding the matter would be made after he had consulted with his superiors, but that they were suspended for the time being.

On May 24, 1990, the three employees were discharged for "leaving campus during working hours without proper authorization." Record at 103, 19. Sometime after the employees were terminated, Druml learned that these employees claimed that two other custodial employees were at the Station on the morning of May 21, 1990, in contravention of the Rule. Druml attempted to verify this claim, but could discover no facts to substantiate the allegations.

Russell applied for unemployment benefits. A deputy for the Indiana Department of Employment and Training Services ("Department") ruled that Russell had been discharged for just cause, precluding her receipt of benefits. Russell appealed this decision to an Administrative Law Judge ("Referee") in the Department, who conducted a hearing and affirmed the deputy's decision. On appeal, the Board heard oral argument from the parties and modified and affirmed the Referee's determination that Russell had been discharged for just cause, denying her unemployment benefits.

This appeal ensued. Other relevant facts will be stated in our discussion of the issues.

## DISCUSSION AND DECISION

### Issue One

Russell alleges that the Board erred in making credibility determinations, that these determinations were the sole determinative factor in denying her benefits, and that any such error was not harmless. We disagree.

■ The Board's findings of fact are presumed conclusive and binding, and we may reverse them only if we believe that reasonable persons would be bound to reach different conclusions. *Furr v. Review Board of the Indiana Employment Security Division* (1985), Ind.App., 482 N.E.2d 790, 794. We may not substitute our opinions and conclusions for the Board's, and must give deference to its expertise. *Delco Remy v. Review Board of the Indiana Employment Security Division* (1987), Ind.App., 503 N.E.2d 1251, 1254. Therefore, we must not reweigh evidence and must view the record of the administrative proceedings in a light most favorable to the Board's decision. *Id.* Generally, administrative agencies are allowed to make findings on issues of credibility without taking live testimony. *Stanley v. Review Board of the Department of Employment and Training Services* (1988), Ind.App., 528 N.E.2d 811, 813. Moreover, a review board is the ultimate factfinder and credibility is a question of fact. *Id.* at 814.

In *Stanley*, this court stated that where demeanor credibility is the sole determinative factor and the review board reverses the referee's findings, due process concerns are crucial. *Id.*, at 814. This holding, however, was very narrow; due process rights are irrevocably jeopardized only where demeanor credibility is the *sole* determinative factor in *reversing* a referee's finding (emphases added). *Id.* The

court's holding thus applies only to a very narrow class of cases decided by the Board.

■ We find that Russell's reliance on *Stanley* in attacking the Board's additional findings is misplaced. The procedural context of the two cases makes *Stanley*'s holding inapplicable to Russell's situation. First, in *Stanley*, the Board reversed the referee's findings, while in Russell's case the Board affirmed and only slightly modified the Referee's findings. Indeed, the *Stanley* court explicitly held that "where the Board upholds the demeanor credibility finding of a referee the same due process concerns are not implicated." *Stanley*, 528 N.E.2d at 815. Second, the demeanor credibility determinations that were made by the Board were not the sole determinative factor involved in the Board's decision. Record at 127, 128. Rather, the Board affirmed the Referee's findings, which we find were in themselves sufficient to sustain the denial of unemployment benefits, *see Issue Two*, and the additional findings the Board made were merely superfluous; thus, any error was harmless.[2] There was no dispute at the hearing that Russell was aware of the Rule and admitted stopping at the Station, thereby violating the Rule. *See* Record at 47–48. Other documentary evidence admitted showed that Russell was present at the meeting in which the new rules were discussed and that when she was present at the Station on the morning of May 21, 1990, she was "clocked in." Record at 97, 101, 102. The credibility determinations that Russell argues were imperative to the Board's decision were not the sole factors on which it relied in rendering its decision. Therefore, *Stanley* does not warrant a reversal. *See St. Mary's Medical Center v. Review Board of the Indiana Employment Security Division*, (1986), Ind.App., 493 N.E.2d 1275, 1277 (due process not violated where Board read "paper record" made before referee al-

though some evidence in conflict; witness demeanor and credibility determination not determinative factors before Board). Russell has not shown that the Board's credibility determinations were in error or were the sole determinative factor in denying her claim.

*Issue Two*

Russell additionally claims that even without considering the demeanor credibility determinations discussed above, the Board's decision denying her unemployment compensation benefits was contrary to law. We find that the Board's decision was proper.

■ A contention that the Board's decision is contrary to law presents two questions: whether the evidence is sufficient to sustain the findings of fact, and whether the findings of fact are sufficient to sustain the Board's decision. *Citizens Gas and Coke Utility v. Review Board of the Indiana Employment Security Division* (1984), Ind.App., 471 N.E.2d 1175, 1176, *trans. denied*. In determining whether the Board's decision is contrary to law, we are bound by the Board's factual determinations, and will neither weigh the evidence nor judge the witnesses' credibility. *Id.* We will disturb the Board's decision only if reasonable persons would reach a different result, and will only consider the evidence, together with its reasonable inferences, most favorable to the Board's decision. *Id.* Russell thus labors under a heavy burden in seeking to demonstrate that the Board's decision was contrary to law.

■ On appeal from a denial of benefits, the claimant bears the burden of showing error. *McCurdy v. Department of Employment and Training Services* (1989), Ind.App., 538 N.E.2d 277, 279. When an employer alleges that a dis-

---

2. Russell makes much of Druml's supposed failure to mention specifically that stops at the Station while "clocked in" amounted to violations of the Rule. This argument is disingenuous, at best. *See* Ind. Appellate Rule 8.3(A)(7). Druml was not required to mention every possible off-campus location in his explanation of the Rule. Moreover, Druml asserts that he did spe-

cifically discuss stops at the Station. In any case, this issue, and the Board's resolution of it, while possibly a witness demeanor and credibility issue, was not the sole determinative factor in its decision. Rather, the Board's decision was based on numerous factors, including Russell's admitted violation of the Rule, which are supported by the record. *See Issue Two*.

charged employee seeking unemployment benefits was discharged for just cause, the employer has the burden of establishing a *prima facie* case showing just cause, after which it is incumbent upon the employee to produce evidence which rebuts the employer's case. *Id.* Moreover, the determination of whether an employer had just cause to discharge an employee for purposes of determining the employee's eligibility for unemployment compensation benefits is a question of fact for the Board to determine in each case on its particular facts; the Board's decision regarding all questions of fact is conclusive and binding on an appellate tribunal if supported by the evidence. *American Cablevision v. Review Board of the Indiana Employment Security Division* (1988), Ind.App., 526 N.E.2d 240, 242; IND.CODE § 22-4-17-12(a).

▮ In Indiana, an unemployed claimant is ineligible for unemployment benefits if he is discharged for "just cause." *Ryan v. Review Board of Indiana Department of Employment and Training Services* (1990), Ind.App., 560 N.E.2d 112, 114; IND. CODE § 22-4-15-1. Under I.C. § 22-4-15-1(d), "just cause" includes:

"(1) separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge;

(2) knowing violation of a reasonable and uniformly enforced rule of an employer;

(3) unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness;

(4) damaging the employer's property through willful negligence;

(5) refusing to obey instructions;

(6) reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours;

(7) conduct endangering safety of self or coworkers; or

(8) incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction or for any breach of duty in connection with work which is reasonably owed an employer by an employee."

I.C. § 22-4-15-1(d)(1)-(8). Witt asserted that Russell was discharged for violating I.C. § 22-4-15-1(d)(2). To establish a *prima facie* case for violation of an employer rule under I.C. § 22-4-15-1(d)(2), it is necessary for the employer to show that the claimant: (1) knowingly violated; (2) a reasonable; and, (3) uniformly enforced rule. *Hehr v. Review Board of the Indiana Employment Security Division* (1989), Ind. App., 534 N.E.2d 1122, 1125. The Referee found that Witt had made this showing, and this determination was affirmed by the Board. *See* record at 115-116, 127-128.

▮ After Witt presented evidence that Russell had violated its Rule, Russell had to present sufficient evidence to rebut Witt's *prima facie* showing of violation. *See McCurdy,* 538 N.E.2d at 279. The record shows that Russell did not provide such evidence to sustain her burden. Russell admitted that she was present at the meeting in which the new work rules were discussed, and that she was present off-campus at the Station after "clocking in" on May 21, 1990.[3] Record at 47-48, 97, 101-102. Russell's argument that Druml's alleged failure to mention specifically stops at the Station as violations of the Rule is not persuasive. The Rule's language was clear: any absence from the campus while "clocked in" was a violation, and grounds for dismissal. *See* record at 97. There was no need for Druml to delineate the precise parameters of this rule in order for its meaning to be understandable to Witt's employees. Russell herself admitted that she essentially understood the new work rules, and had had an opportunity to ask for clarification at the staff meeting on

---

3. Russell's alleged defense involved her contention that two other employees were also present at the Station on the morning of May 21, 1990, while "clocked in," thus violating the Rule as well. However, Druml investigated this claim and found no evidence which would support this allegation. *See* record at 19-20. We note that had Russell been discharged, while her two companions in the automobile that morning were retained by Witt, a different case would be presented, seriously bringing Witt's uniform enforcement of the Rule into question. However, we resolve only the issue presented by the facts in the case at bar.

May 18, 1990. Record at 54–55. Furthermore, conflicting testimony exists regarding whether Druml did in fact mention the Station in explaining the Rule. Such conflicts were for the Referee and Board to assess, and we will not disturb their findings. *See American Cablevision,* 526 N.E.2d at 242. Therefore, we find that the evidence is sufficient to sustain the findings of fact, and the findings of fact are sufficient to sustain the Board's decision. *See Citizens Gas and Coke Utility,* 471 N.E.2d at 1176.

■ Russell further contends that the penalty for violating the Rule was not proportional to the offense. This assertion is not persuasive. We may not second-guess how a private employer enforces its rules. *Easton v. Review Board of the Indiana Employment Security Division* (1987), Ind.App., 513 N.E.2d 668, 670, *trans. denied.* Such decisions are left to the business itself, and we may not consider them. *Id.; see also Yoldash v. Review Board of the Indiana Employment Security Division* (1982), Ind.App., 438 N.E.2d 310, 314 (under certain circumstances, even single instance of misconduct may constitute "just cause," precluding receipt of benefits).

■ Also, Russell argues that her violation of the Rule was not "knowing." However, the Rule's language and meaning were clear, and Russell's admission to violating it equally pristine. She was aware of the Rule but violated it anyway, and these undisputed facts amply support the Board's decision. *See Beene v. Review Board of Indiana Department of Employment and Training Services,* (1988), Ind. App., 528 N.E.2d 842, 846 (Indiana does not require willful misconduct to constitute "just cause"; where all employees aware of policy, enforcement uniform, and claimant admitted violation, denial of benefits proper); *Wakshlag v. Review Board of the Indiana Employment Security Division* (1980), Ind.App., 413 N.E.2d 1078, 1082 (no need for Board to make findings of fact regarding claimant's subjective intent if discharge reasonably justified based on claimant's objective behavior); *cf. McCurdy,* 538 N.E.2d at 279–280 (where violation results from mere misunderstanding rather than wrongful intent, "just cause" is not demonstrated). We have already determined that Russell's contention that Druml's failure to include specifically stops at the Station in the Rule's prohibitions is without merit.

■ Russell further argues that Witt's Rule is not reasonable; therefore, her discharge cannot be characterized as one for "just cause." We disagree. A work rule is reasonable if it protects the interests of the employees as well as those of the employer. *Jeffboat, Inc. v. Review Board of the Indiana Employment Security Division* (1984), Ind.App., 464 N.E.2d 377, 380. The Rule at issue is not *per se* unreasonable as a matter of law. Employees were told what was expected of them to continue working for Witt. *See* Record at 96–100. Witt had an interest in efficiently running its business, *see Beene,* 528 N.E.2d at 846, and the Rule effectively promoted this legitimate goal. *See also Best Lock Corp. v. Indiana Department of Employment and Training Services* (1991), Ind.App., 572 N.E.2d 520, 524–525 (to show that rule regulating employee's off-duty activities is reasonable, employer must show that activity sought to be regulated bears reasonable relationship to employer's business interest). The Referee and Board found Witt's Rule reasonable, and we agree.[4] Russell has failed to show that the Board's decision is contrary to law.

Affirmed.

BAKER and BARTEAU, JJ., concur.

---

4. Russell's comparison of the reasonableness of Witt's Rule with the reasonableness of employers' rules based on efficient operation such as those found in the low wage sweat shops of the nineteenth century and the rules that resulted in the sealing of emergency exits in chicken pro-

cessing plants to prevent employees from pilfering chickens is not persuasive. Reply Brief at 12. We see a great disparity between the rules resulting in inhumane conditions Russell describes and the rule prohibiting unauthorized stops off-campus during work hours that is the subject of this appeal. The reasonableness of requiring employees to remain on the work premises during work hours unless they receive permission to leave is far removed from the reasonableness of employment conditions existing prior to the enactment of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (1975 & Supp.1991). Moreover, the penalty to be imposed for violations of work rules is reserved for the employers' discretion; we may not second-guess such judgments. *See Easton,* 513 N.E.2d at 670. Thus, Witt's penalty assessed against Russell cannot fairly be characterized as "draconian." *See* Appellant's Brief at 35; Reply Brief at 17.