**David G. GIBSON, Appellant,**

v.

**REVIEW BOARD OF THE INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and Bridgestone/Firestone, Inc., Appellees.**

No. 93A02–9604–EX–187.

Court of Appeals of Indiana.

Oct. 28, 1996.

---

Fred O. Towe, Fillenwarth, Dennerline, Groth & Towe, Indianapolis, for Appellant.

Pamela Carter, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee Review Board.

John T. Neighbours, Jan Michelsen, Baker & Daniels Indianapolis, for Appellee Bridgestone/Firestone, Inc.

Richard F. Shaw, Jones, Day, Reavis & Pogue, Pittsburgh, PA, of counsel.

## OPINION

STATON, Judge.

David G. Gibson ("Gibson") appeals the determination of the Review Board of the Indiana Department of Workforce Development ("Board") that Gibson is not entitled to unemployment compensation benefits. The sole issue presented for review is whether the Board erred when it found that Gibson was terminated for just cause thus making him ineligible for unemployment benefits.

We affirm.

The facts most favorable to the Board's decision reveal that Gibson was participating in a strike against Bridgestone, his employer.

On December 10, 1994, Gibson was on a picket line carrying a holstered handgun. He was picketing in front of a plant entrance used by temporary replacement workers. Replacement workers had complained to management that they were threatened and scared by the presence of firearms on the picket line. It was for this conduct that Gibson was discharged by Bridgestone.

Subsequently, Gibson applied for unemployment compensation. An administrative law judge (ALJ) initially ruled in favor of Gibson. Later, the ALJ's decision was reversed by the Board. The Board found Gibson was discharged for just cause, since his conduct endangered the safety of himself or coworkers within the meaning of IND.CODE § 22–4–15–1(d)(7) (1993). This appeal ensued.

■■■ Whether an employer had just cause to discharge an employee is a question of fact for the Board. *Russell v. Review Bd. of Indiana Dept. of Employment and Training Services,* 586 N.E.2d 942, 948 (Ind.Ct. App.1992). Board decisions regarding all questions of fact are conclusive and binding on an appellate tribunal if supported by the evidence. *Id.* Our review is limited to examination of the evidence and reasonable inferences drawn therefrom which would support the Board's decision. *Marsdem v. Review Bd. of Indiana Dept. of Workforce Development,* 654 N.E.2d 907, 909 (Ind.Ct. App.1995), *reh. denied.* Only where reasonable persons, considering only the evidence supporting the Board's findings, would be bound to reach a different conclusion will we overturn the Board's findings. *Id.*

■■ We conclude that a reasonable person would not be bound to reach a result different from the Board's. The picket line is often a very highly and emotionally charged situation. The livelihoods of the strikers are at risk. Those who do not participate in the strike and those who are hired as replacement workers are often the subject of abuse by striking workers.[1] It was not unreasonable for the Board to find Gibson's purpose in arming himself at the picket line was to intimidate replacement workers. There is evidence in the record that temporary workers expressed to management their concern over the presence of firearms on the picket line. Introducing a firearm in this emotionally charged situation could easily lead to an escalation of tension and physical confrontation between the strikers and the replacement workers. It is this type of activity which could cause replacement workers to arm themselves, increasing the risk of a violent and deadly outburst. Under these circumstances, we conclude that the Board's finding that Gibson's conduct endangered the safety of himself or coworkers is supported by the evidence, and a reasonable person would not be bound to reach a different conclusion.[2]

■■ In support of his position, Gibson contends that in order to satisfy IND.CODE § 22–4–15–1(d)(7) it must be shown that his conduct created an actual danger or immediate risk of harm to oneself or coworkers. IND.CODE § 22–4–15–1(d)(7) provides that discharge for just cause shall include "conduct endangering safety of self or coworkers." Gibson invites us to graft onto IC 22–4–15–1(d)(7) a requirement that there be an actual danger or immediate risk of harm to oneself or fellow employees. Where a statute is clear and unambiguous, it is not the subject of statutory construction. *Indiana Patient's Comp. Fund v. Anderson,* 661 N.E.2d 907, 909 (Ind.Ct.App.1996), *trans. denied.* An unambiguous statute must be held to mean what it plainly expresses, and its plain and obvious meaning may not be ex-

---

1. Replacement workers are commonly referred to as "scabs" by striking workers. This term itself highlights the inherent animosity between these two groups.

2. Gibson also contends that carrying a handgun at this plant did not provide just cause for his termination since he is a licensed firearms dealer and that the presence of firearms in this plant was not unusual as many employees carried and dealt in firearms. However, Gibson was carrying the firearm while on a picket line and not in his capacity as a dealer. As noted above, Gibson's intent in carrying the gun under these circumstances was to intimidate temporary workers, not to negotiate for the sale of a firearm. Thus, we are not persuaded that Gibson's firearm license and the commonplace presence of firearms at the plant make Gibson's conduct innocent under these circumstances.

panded or restricted. *George P. Todd Funeral Home v. Beckner,* 663 N.E.2d 786, 787 (Ind.Ct.App.1996). We glean no inherent ambiguity from the phrase "conduct endangering safety of self or coworkers" which warrants a new judicial interpretation changing the statutes meaning by grafting a requirement of actual danger or immediate risk of harm onto IC 22–4–15–1(d)(7).

Gibson relies on a passage from *St. Mary's Med. Center of Evansville, Inc. v. Review Bd. of the Indiana Employment Security Div.,* 493 N.E.2d 1275 (Ind.Ct.App.1986) as authority that IC 22–4–15–1(d)(7) requires a showing of actual danger or risk of harm. *St. Mary's* involved the termination of a hospital employee for slapping another employee who was holding an infant. The employee was terminated for violating a hospital rule prohibiting conduct endangering self or others. According to St. Mary's, the employee endangered another since the employee holding the infant could have dropped the infant after being slapped. The Board found for the employee and awarded unemployment compensation.

The passage relied upon by Gibson reads: "St. Mary's further argues that the Board unreasonably interpreted 'endangerment' to require actual physical harm. On the contrary, the Board merely required that there be actual danger or risk of harm." *St. Mary's, supra,* at 1278. This passage is dicta and does not impose any additional requirement upon IC 22–4–15–1(d)(7). This court was simply noting the standard the Board applied in interpreting a rule of St. Mary's under the particular facts of that case. Too, we were analyzing the sufficiency of the evidence supporting the Board's decision. It was not a standard which this court adopted as an outcome determinative test for IC 22–4–15–1(d)(7), as Gibson urges in this case. We do not agree that *St. Mary's* requires a showing of actual danger or immediate risk of harm in order for an employer to demonstrate just cause for discharging an employee under IC 22–4–15–1(d)(7).

For the above reasons, we affirm the Board's finding that Gibson was discharged for just cause, since he engaged in conduct endangering the safety of himself or coworkers.

Affirmed.

SHARPNACK, C.J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent. After his discharge, Gibson applied for and was denied unemployment compensation benefits with the Indiana Department of Workforce Development (Department). He appealed the decision and a hearing was conducted by an administrative law judge (ALJ). The ALJ found the Company's discharge of Gibson to be without just cause because "[it] failed to establish [Gibson's] act of carrying a weapon on the picket line *coerced or intimidated fellow workers.*" (Emphasis added.) Thereafter, the Company filed an appeal with the Review Board. Although noting "there is no suggestion that [Gibson] ever drew the gun or attempted to show it to the replacement workmen or anyone else," the Review Board relied on *Keco and Lima,* 301 N.L.R.B. 303, 1991 WL 16265 (1991) and reversed the ALJ's decision.

There are no allegations that Gibson violated any civil or criminal law in carrying his gun to the strike picket line. Further, although the Company claims to have a work rule against bearing firearms on company premises, the Company has denied the rule was a factor in Gibson's discharge.[3] Rather, it contends Gibson's discharge was based on IND.CODE § 22–4–15–1(d)(7) (1995 Supp.) which provides there is just cause to discharge an employee who engages in "(7) conduct endangering safety of self or coworkers."

Indiana has no statute or case law which specifically addresses the issue of whether

---

**3.** IND.CODE § 22–4–15–1(d)(2) provides that "just cause" lies in where there is a showing that the employee committed a "knowing violation of a reasonable and uniformly enforced rule of an employer." However, since the Company expressly stated it did not discharge Gibson pursuant to its firearms rule, this section has no bearing on this appeal.

possession of a firearm on or near a strike picket line amounts to just cause for discharge for purposes of determining eligibility for unemployment benefits. However, this Court has previously discussed the concept of just cause under IND.CODE § 22–4–15–1 as it pertains generally to the endangerment of employees or others. *See St. Mary's Med. Center v. Review Bd. of Ind.*, 493 N.E.2d 1275, 1278 (Ind.Ct.App.1986). In *St. Mary's*, this Court upheld a finding that an employee who slapped another employee who was holding an infant was not discharged for just cause because "it could be inferred that the infant was not actually in danger as a result of [the employee's] actions." *Id.* at 1278. In response to the employer's complaint that the Board required "actual physical harm" *id.*, this Court stated, "On the contrary, the Board merely required that there be *actual danger or risk of harm.*" *Id.* (Emphasis added.) Statements made in resolution of issues raised by the parties does not constitute dicta. Thus, Gibson's reliance upon *St. Mary's* is appropriate.

By contrast, the federal decisions in this area, including *Keco and Lima* relied upon here by the Board, merely require a showing of "a reasonable tendency to coerce or intimidate employees." *Keco and Lima*, 301 N.L.R.B. at 303–304. Inasmuch as the propriety of unemployment compensation benefits, governed by state law, is at issue, the test expressed in *St. Mary's*, rather than the *Keco and Lima* NLRB rule, is dispositive of this case. *Cf. Catalytic, Inc. and IBEW, Local Union 136*, 118 L.R.R.M. (BNA) 1609, 1985 WL 45639 (1985) (state laws are not dispositive of separate and distinct issues raised under National Labor Relations Act).[4] Nonetheless, because there are no Indiana cases dealing with possession of firearms on strike lines, the federal cases are useful in our analysis of Gibson's claim.

In *Keco and Lima*, employee Lima was discharged after being seen with a gun inside his waistband on a railroad track behind the company near a strike line located at an employee entrance. Lima engaged in arguably evasive and suspect behavior when approached by company guards. The guards never got closer to him than 25 yards. When he saw the guards, he left the premises to sit in his car across the street from the company premises. After police were summoned a short time later, they found no gun on him. In *Keco and Lima*, the NLRB limited the decision to its facts. Although finding Lima's possession of a firearm to be misconduct, it specifically declined to conclude that possession of a firearm at or near the picket line is misconduct *per se. Keco and Lima*, 301 N.L.R.B. at 303–304.

In a similar vein, in *Advance Ind. Div.-Overhead Door v. N.L.R.B.*, 540 F.2d 878, 880 (7th Cir.1976), an armed employee drove to the company premises during a strike and parked her camper across the street. She then exited her camper and walked across the street to the company where she "drew [the] handgun, ... crouched down and aimed the gun at .... light" poles on the plant grounds. *Id.* at 882. The employee was discharged and the Seventh Circuit affirmed her dismissal. As the court stated in *Overhead Door*,

> [the gun was] brought as a concealed weapon and then brought out into the open upon which she went into a crouching position and aimed the gun at company property for a minute or two. Her actions could not have failed to direct attention to her and to what she was doing. The actions were openly performed in the picketing area of the plant which was not shut down....

*Id.* Next, in *Clear Pine Mouldings, Inc.*, 268 N.L.R.B. 1044, 1049, 1984 WL 36067 (1984), reinstatement was denied to a striker who wielded a two-foot club when "circumstances clearly indicate[d] that violence or instilling fear of bodily harm was the reasonably intended use of the club...." *Id.*

At the other end of the spectrum is *Newport News Shipbuilding & Dry Dock v.*

4. The Company alleges Gibson's conduct amounted to an unfair labor practice, pursuant to 29 U.S.C. § 158(b). However, this issue is not determinative of whether Gibson's acts amounted to misconduct for purposes of a determination of just cause under IND.CODE § 22–4–15–1. *See Simmons Co. v. Rev. Bd., Ind. Emp. Sec. Div.*, 137 Ind.App. 154, 159, 206 N.E.2d 148, 151 (1965).

*N.L.R.B,* 738 F.2d 1404, 1409 (4th Cir.1984). In *Newport News,* a striking employee, carrying a sheathed hunting knife on his belt, picketed his employer's shipyard. After the employee covered the knife with his coat, he was arrested for carrying a concealed weapon. In reversing the employee's discharge, the Fourth Circuit stated, "[M]ere possession of a small knife unaccompanied by circumstances indicating a threat of force does not reasonably tend to threaten or intimidate nonstrikers." *Id.* Found to be pertinent facts in the case were that employees of the shipyard were known to carry knives, and the employees actions were not accompanied by threatening gestures.

Unlike *Keco and Lima,* Gibson did not attempt to conceal his weapon and did not evade authorities when asked to produce the gun and a permit. Although there were reports by some replacement workers that previous threats had been launched by strikers, there were no reports of any violence that day. Gibson did not engage in any threatening gestures with the gun towards replacement workers that day. Neither is there evidence of specific complaints against him that day or at any time during his 29 years of employment with the Company, including the previous strikes in which he participated.

Further, Gibson is a licensed firearms dealer. As was the case in *Newport News,* there was testimony that firearms on Company premises is commonplace and that firearm dealers often sell guns to salaried employees in the plant. Specifically, union representative Charles Gibson stated:

> [G]uns, guns in a Noblesville plant is nothing new. Selling of guns in our plant is nothing new. Running off guns on tip boards and boards and things of this nature are nothing new. The union has presented the company evidence of where lots of salaried people [have] bought hand guns from Federally licensed dealers in our factory. We are used to having firearms in our factory. In our possession it's, and, and we're going to that, that the company has allowed this for x number of years. There is no written policy that the union has or is aware of to prohibit that.

Moreover, unlike the employee in *Overhead Door,* "there is no suggestion that [Gibson] ever drew the gun or attempted to show it to the replacement workmen or anyone else." Given the above, the Company has failed to show that Gibson's conduct posed actual danger or risk of harm to fellow employees. Thus, it has not met its burden of establishing a *prima facie* case of just cause for purposes of Gibson's eligibility for unemployment compensation benefits. *Russell v. Review Bd.,* 586 N.E.2d 942, 947 (Ind.Ct.App. 1992). I would vote to reverse.

