FILED

Dec 08 2017, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Rosemary L. Borek
Stephenson Morow & Semler
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Michael C. Healy
Staff Counsel
Indiana Civil Rights Commission
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Roman Marblene Co., Inc., *Appellant-Respondent,* <br><br> v. <br><br> Reginald Baker, *Appellee-Complainant* | December 8, 2017 <br><br> Court of Appeals Case No. 93A02-1701-EX-91 <br><br> Appeal from the Indiana Civil Rights Commission <br><br> Alpha Blackburn, Commissioner <br> Sheryl Edwards, Commissioner <br> Steven Ramos, Commissioner <br> Ahmed Young, Commissioner <br><br> Docket No. EMra10110533 |

**Crone, Judge.**

# Case Summary

Roman Marblene Co, Inc. ("Roman Marblene"), appeals the decision of the Indiana Civil Rights Commission ("ICRC") in favor of Reginald Baker. Baker filed a complaint alleging that his former employer, Roman Marblene, discriminated against him on the basis of race. Following an evidentiary hearing before an administrative law judge ("ALJ"), the ALJ entered a proposed order determining that Roman Marblene had not engaged in an unlawful discriminatory practice. Baker objected to the proposed order, and the ICRC heard oral argument on the objections. Thereafter, the ICRC reversed the ALJ, entered a final order determining that Roman Marblene unlawfully discriminated against Baker, and awarded him damages for lost wages. On appeal, Roman Marblene contends that the ICRC's final order is invalid because the ICRC was without authority to reverse the ALJ's determination. Roman Marblene further asserts that the ICRC's order is void because it was issued outside the statutorily prescribed time period. Finding that Roman Marblene has not met its burden to establish the invalidity of the ICRC's final order, and concluding that the order is not void, we affirm.

# Fact and Procedural History

The facts most favorable to the ICRC's decision indicate that Roman Marblene is a small company located in Corydon that manufactures molded bathroom fixtures such as sinks, tubs, and showers. In 1999, company owner Bruce Hoese hired Baker, an African-American male. Baker's duties at Roman Marblene included: operating a gel-coat sprayer; setting up molds; installing

hats on casted molds; removing casting for the molds; maintaining and repairing machinery; operating a forklift; and maintaining facilities equipment. In 2005, Roman Marblene was purchased by James Triantos.[1] After the purchase, Baker became the only African-American employee of the company. He was often subjected to racial slurs and harassment.

[3] In December 2009, Baker was involved in an automobile accident and was placed under a doctor's care for one week due to an injured hand. That same week, the Roman Marblene plant was shut down for the holidays. The plant reopened on January 4, 2010. On that day, Baker had an appointment and went to see his physician. Triantos docked Baker one day's pay for failing to call in sick in advance. Baker was the first salaried employee to be treated this way for failing to call in advance.

[4] Baker returned to work on January 5, and he was able to perform all of his work assignments. He is ambidextrous and performed his job using one hand. Baker's production supervisor, David Hunter, observed that Baker had no problems with his job duties, including operating the spray gun or lifting items weighing more than 100 pounds. Baker's coworkers, Michael Wiseman, Jason Lawalin, and Jamie Carney, also observed that, even after his injury, Baker had no difficulty performing his job. It is common practice and expected at Roman

---

[1] The record indicates that James Triantos and his brother Frank Triantos were co-owners. However, James is the current president, and we will refer to him hereinafter as Triantos.

Marblene that coworkers help each other with tasks such as lifting when necessary.

[5] On January 19, 2010, when Baker learned that Triantos had docked him one day's pay for failing to call in advance on January 4, Baker protested in writing to Triantos. Then, on January 21, 2010, Triantos came into the work area and asked Baker to change the head of the spray gun. Baker replied that he could not work on the spray gun because another employee, whom he was training, was using it at the time. Triantos claimed that Baker refused to perform the requested task due to a medical restriction, but several witnesses did not corroborate Triantos's version of events and instead corroborated Baker's version of events. Later that day, Triantos formally placed Baker on involuntary unpaid medical leave. Thereafter, Baker made frequent attempts to return to work. Triantos continually rejected Baker's attempts to return. At least four similarly situated Caucasian Roman Marblene employees with medical impairments were not treated in the same manner and not placed on involuntary medical leave.

[6] On March 8, 2010, Baker filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") alleging that Roman Marblene discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964. The complaint was transferred to and docketed by the ICRC on March 24, 2010.

[7] Over the next several months, Baker went to Roman Marblene on several occasions to try to return to work. As of September 14, 2010, Baker returned to Roman Marblene with his physician's statement attesting to his ability to return to "regular duty" at work. Respondent's Ex. R. The statement did not list any medical restrictions. Nevertheless, Triantos continued to tell Baker that he was not "100 percent." Tr. Vol. 2 at 166. Triantos also objected to Baker using the back door to come into his office, although Caucasian employees used the back door without objection from Triantos. On October 12, 2010, Baker returned to the Roman Marblene plant for the final time in an effort to get his job back. This time he had a physician's statement that said he was 100 percent fit to return to work with a specific "No restrictions" notation. Respondent's Ex. T. Triantos refused to allow Baker to return and instead told Baker that he would need to see all of Baker's medical records. Following a verbal confrontation between Baker and Triantos, Triantos ordered Baker off the premises, effectively terminating his employment.

[8] On July 22, 2011, the ICRC issued a determination of probable cause to believe that discriminatory practices occurred. A year later, after conducting discovery, Roman Marblene filed a motion for summary judgment. An ALJ held a hearing and issued an order granting summary judgment in favor of Roman Marblene.

[9] Baker filed his objections to the summary judgment order, and, after a meeting on April 25, 2014, the ICRC issued an order remanding the case to the ALJ for a hearing on the merits.[2] The ALJ conducted a two-day evidentiary hearing on April 8 and 9, 2015. On March 4, 2016, the ALJ entered proposed findings of fact and conclusions of law, determining that Baker failed to meet his burden to establish that Roman Marblene discriminated against him on the basis of race.

[10] Baker filed his objections to the ALJ's proposed findings and conclusions on March 21, 2016. The ICRC heard oral argument on May 27, 2016, and thereafter, on December 19, 2016, issued findings of fact and conclusions of law determining that Baker met his burden of establishing that Roman Marblene discriminated against him on the basis of race. Specifically, the ICRC concluded in relevant part as follows:

> 7. Baker met his burden of establishing a prima facie case under the *McDonnell Douglas Corp. v. Green*, [411 U.S. 792 (1973)], standard by demonstrating that: (1) he is a member of a protected class, a person with a disability; (2) he was qualified to hold the position in question; (3) he was able to and did perform the work at the standard set by the employer; (4) he was placed on involuntary medical leave by his employer; (5) he was denied the opportunity to return to work despite repeated requests; (6) he was effectively terminated from his employment; and (7) similarly situated Caucasian co-workers, having similar or worse impairments, were allowed to continue working there.

---

[2] Roman Marblene filed a motion to reconsider the remand order after the public access counselor found that the ICRC's deliberations off the record violated the Open Door Law. In its brief, Roman Marblene states that although it is not reflected in the record, the ICRC openly deliberated at an October 24, 2014, hearing and voted to grant the motion to reconsider but declined to reverse its order remanding the case to the ALJ.

8. Roman Marblene met its burden of proffering a legitimate, non-discriminatory reason for its decision not to allow Baker to return to work; that being: (a) Baker's hand had not sufficiently healed; (b) Baker arguing with his employer forced his termination; and (c) co-workers were not similarly situated.

9. Baker has proven by a preponderance of the evidence that the reasons proffered by Roman Marblene were pretextual and unworthy of credence. These include the following:

a. "Baker's hand had not sufficiently healed."

This is pretextual because it stands in sharp contrast to: (a) overwhelming eyewitness testimony, including supervisors' testimony, that Baker was able to perform all of his assigned work; and (b) competent medical reports evidencing Baker's ability to return to work without any restrictions.

b. "[Baker's] arguing with his employer forced his termination."

This is pretextual in light of the fact that Baker had, on at least three (3) occasions, presented Triantos with medical release forms permitting him to return to work. The fourth slip was the one which stated unequivocally, "no restrictions". Triantos'[s] reaction that he first needed to see all of Baker's medical records is deemed to be disingenuous, provocative and unworthy of credence. Where harassment is intended to provoke a response from the plaintiff in order to get him fired, the decision to terminate is not neutral, but discriminatory. Baker was treated in such a provocative manner, revealing Triantos'[s] intent to terminate him.

c. "The co-workers were not similarly situated to Baker."

This is pretextual for the reason that all employees in the small workshop, regardless of job title, helped one another with their assigned duties; including lifting, as needed. Furthermore, other employees, including Belty and Bauer, were given work restrictions, had their job duties modified, or were given frequent assistance by co-workers. Unlike Baker, neither of these men was placed on involuntary medical leave.

d. "Baker was placed on medical leave because he refused to perform a task given to him by Triantos, due to his medical restrictions."

This is also pretextual because it is accepted that Baker did not refuse to perform the task, but that he could not do so because co-worker Brown was then using the spray gun. Baker did not refuse to perform any task assigned to him by Triantos because of a hand injury.

10. If there was any doubt as to Baker's ability to perform his job in January of 2010, there could be no doubt that he was able to perform his duties after September 14, 2010. This was one (1) month before he was actually terminated by Triantos. In September, Baker presented to Triantos a physician's statement stating "no restrictions". In response, Triantos still refused to allow Baker to return to work.

11. Baker's final attempt to return to work was in October of 2010, with yet another physician's statement stating "no restrictions", and he was met by yet another refusal by Triantos and, this time, Baker was evicted from the premises.

12. It is accepted that Baker could and did perform the work, at the standard set by the employer, as of January 22, 2010. Roman Marblene's subsequent refusals to allow Baker to return to work were illegal.

13. The [Indiana Civil Rights Law ("ICRL")] makes it a discriminatory practice to exclude a person from equal opportunities in employment because of, among other things, race. Every discriminatory practice relating to employment is unlawful, unless it is specifically exempted by the ICRL. Because there is no applicable exemption for such a practice, it was unlawful.

Appealed Order at 11-13.

The ICRC ordered Roman Marblene to cease and desist from terminating its qualified employees on the basis of race and awarded Baker $96,228.40 in damages for lost wages. This appeal ensued.

## Discussion and Decision

Roman Marblene appeals a final order of the ICRC. This Court has explained,

When reviewing a decision of an administrative agency, we apply the same standard as the trial court. We will reverse the [Agency's] order only if it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege or immunity; (3) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. We give deference to the expertise of the agency and will not reverse simply because we may have reached a different result than the Commission. The burden of demonstrating the invalidity of an action is on the party challenging its validity. An interpretation of statutes and regulations by the administrative agency charged with enforcing those statutes and regulations is entitled to great weight.

*Cardinal Ritter High Sch., Inc. v. Bullock*, 17 N.E.3d 281, 287 (Ind. Ct. App. 2014) (citations and quotation marks omitted).

[13]     ICRL reflects our State's public policy to:

> provide all of its citizens equal opportunity for education, employment, access to public conveniences and accommodations, and acquisition through purchase or rental of real property, including but not limited to housing, and to eliminate segregation or separation based solely on race, religion, color, sex, disability, national origin or ancestry, since such segregation is an impediment to equal opportunity.... The practice of denying these rights to properly qualified persons by reason of the race, religion, color, sex, disability, national origin, or ancestry of such person is contrary to the principles of freedom and equality of opportunity and is a burden to the objectives of the public policy of this state and shall be considered as discriminatory practices.

Ind. Code § 22-9-1-2(a), -(b). In accordance with this public policy, the ICRC is afforded certain authority and charged with certain responsibilities, including the responsibility to "receive and investigate complaints alleging discriminatory practices." Ind. Code § 22-9-1-6(d). The ICRC "shall state its findings of fact after a hearing" and, if it "finds a person has engaged in an *unlawful* discriminatory practice, shall cause to be served on this person an order requiring the person to cease and desist from the unlawful discriminatory practice and requiring the person to take further affirmative action as will effectuate the purposes of this chapter ...." Ind. Code § 22-9-1-6(j) (emphasis added).

[14] "Discriminatory practice" includes "the exclusion of a person from equal opportunities because of race, religion, color, sex, disability, national origin, ancestry, or status as a veteran." Ind. Code § 22-9-1-3(l). "Every discriminatory practice relating to … employment … shall be considered unlawful unless it is specifically exempted by this chapter." *Id*. The ultimate burden of persuasion that the defendant engaged in unlawful discrimination remains at all times with the plaintiff. *Gaff v. Indiana-Purdue Univ. of Fort Wayne*, 51 N.E.3d 1163, 1165 (Ind. 2016) (citing *Ind. Civil Rights Comm'n v. Culver Educ. Found.*, 535 N.E.2d 112, 115 (Ind. 1989)).

[15] Here, the ICRC entered extensive findings of fact and conclusions of law determining that Baker met his burden to prove that Roman Marblene engaged in unlawful discrimination. Roman Marblene asserts that the ICRC was without authority to reweigh the evidence and disregard the proposed findings and conclusions of the ALJ. We disagree.

[16] Throughout its brief on appeal, Roman Marblene appears to confuse the ICRC's standard of review with that of a reviewing court such as this Court. Indeed, courts that review administrative determinations, at both the trial and the appellate level, review the record in the light most favorable to the administrative proceedings and are prohibited from reweighing the evidence or judging the credibility of witnesses. *Whirlpool Corp. v. Vanderburgh Cty.-City of Evansville Human Relations Comm'n*, 875 N.E.2d 751, 759 (Ind. Ct. App. 2007). Our review is restricted to determining whether there is substantial evidence to support the agency's decision, primarily whether its decision was arbitrary,

capricious, an abuse of discretion, or in excess of its statutory authority. *Id*. at 760.

[17] No similar restriction is placed on the administrative agency, here the ICRC. It is well settled that administrative agencies can make findings on issues of credibility without taking live testimony, and moreover, the agency's review board is the ultimate trier of fact and may weigh the evidence before it. *Russell v. Review Bd. of Ind. Dep't of Emp't & Training Servs.*, 586 N.E.2d 942, 946-47 (Ind. Ct. App. 1992) (citing *St. Mary's Med. Ctr. of Evansville, Inc. v. Review Bd. of Ind. Emp't Sec. Div.*, 493 N.E.2d 1275, 1277 (Ind. Ct App. 1986)). As the agency charged with the responsibility and the authority to investigate complaints alleging discriminatory practices, *see* Ind. Code § 22-9-1-6(d), the ICRC is the ultimate authority on whether a person has engaged in an unlawful discriminatory practice.

[18] Pursuant to both ICRL and the Indiana Administrative Orders and Procedures Act ("AOPA"), the agency's ultimate authority *may*, in its discretion, appoint or designate an ALJ to conduct a factfinding hearing. Ind. Code § § 22-9-1-6(i), 4-21.5-3-9 (emphasis added). Contrary to Roman Marblene's assertions, the ultimate authority is not then constrained to accept the ALJ's proposed findings and conclusions simply because it chose in its discretion to utilize this procedure for conducting its investigation and factfinding. Rather, after an ALJ issues a proposed order, "the ultimate authority or its designee shall issue a final order: (1) affirming; (2) modifying; or (3) dissolving" the ALJ's order. Ind. Code § 4-21.5-3-29(b).

[19]     Despite the clear statutory authority of the ICRC to issue a final order affirming, modifying, or wholly dissolving the ALJ's proposed order, Roman Marblene complains that due process concerns are implicated where, as here, the ultimate authority does anything other than affirm the trier of fact's proposed order because modification or reversal involves "substitut[ing] its judgment for that of the ALJ." Appellant's Br. at 25. Roman Marblene cites several cases in support of its argument, but those cases are inapposite as they did not involve the review and reversal of findings and conclusions by the ultimate authority.[3]

[20]     We will, however, address and distinguish our opinion in *Stanley v. Review Board of Department of Employment & Training Services*, 528 N.E.2d 811 (Ind. Ct. App. 1988). In *Stanley*, the agency review board reversed the referee's ruling in favor of the employee/complainant based on a "paper review" of the proceedings below. *Id*. at 813. On appeal, the complainant argued that his right to due process was violated because the review board, unlike the referee, did not have the opportunity to assess the demeanor of the witnesses. We agreed. We stressed, however, that "the sole determinative factor" in the case was the demeanor credibility of the witnesses, and we specifically limited our holding to the "extremely narrow" circumstances presented. *Id*. at 814-15. Indeed, we emphasized that "if other determinative factors exist, the review board would then have an alternative adequate basis reflected in the record for

---

[3] *See, e.g.*, *Cardinal Ritter,* 17 N.E.3d at 282; *Addison v. Review Bd. of Ind. Emp't Sec. Div.*, 397 N.E.2d 1037 (Ind. Ct. App. 1979).

its decision and any due process implications would constitute at most harmless error." *Id*. at 815.

[21] Unlike in *Stanley*, demeanor credibility determinations were not the sole determinative factor involved in the ICRC's decision here. The ICRC made thirty-five findings of fact, many of which involved undisputed facts as well as documentary evidence. Our review of the record reveals that the credibility of the witnesses was not the only basis from which the ICRC could draw its conclusion that Roman Marblene engaged in an unlawful discriminatory practice. We conclude that due process is not implicated here.

[22] Roman Marblene makes no argument that the ICRC's final order was not supported by substantial evidence. Instead, Roman Marblene merely directs us to the evidence that supports the ALJ's proposed order. As we have already stated, we review the record in the light most favorable to ICRC's decision, and our review is restricted to determining whether there is substantial evidence to support the decision, primarily whether its decision was arbitrary, capricious, an abuse of discretion, or in excess of its statutory authority. *Whirlpool*, 875 N.E.2d at 759. Roman Marblene has not met its burden to demonstrate any of these things and thus has given us no cause to reverse the ICRC's order.

[23] As a final matter, Roman Marblene maintains that the ICRC's order is void because the order was issued outside the statutorily prescribed time period. Specifically, Indiana Code Section 4-21.5-3-29(f) provides that a "final order

disposing of a proceeding … shall be issued within sixty (60) days after the latter of:

> (1) the date that the order was issued under section 27 of this chapter;
>
> (2) the receipt of briefs; or
>
> (3) the close of oral argument;
>
> unless the period is waived or extended with the written consent of all parties or for good cause shown.

It is undisputed that the ICRC failed to issue its final order within sixty days of the last event that occurred here, the close of oral argument on May 27, 2016.

[24] This Court has already considered the precise statutory language involved here and concluded that the sixty-day time period is directory rather than mandatory, and that the legislature did not intend the prescribed time period to be essential to the validity of the ultimate authority's final order. As we explained,

> Our review of subsection (f) leads us to believe that the legislature did not intend the prescribed time period to be essential to the validity of the Commission's final order. As is evident from the statute, no consequences attach in the event of an untimely order and under no circumstances has the legislature deprived the Commission of its ultimate authority to issue its final order. The statute neither purports to restrain the Commission from issuing a final order outside of the prescribed time period nor specifies that "adverse or invalidating consequences follow." Moreover, the purpose and intent of the sixty day time period is to promote

the prompt and expeditious resolution of the administrative matters by the ultimate authority. The time period is not intended as a jurisdictional prerequisite to a valid final order. Accordingly, a mandatory construction of subsection (f) would thwart the intention of the legislature.

*State v. Langen*, 708 N.E.2d 617, 622 (Ind. Ct. App. 1999) (citation omitted). As in *Langen*, although we understand Roman Marblene's frustration with the length of time it took for the ICRC to issue its final order, the order issued is not void.

[25] Moreover, Roman Marblene failed to object to the timeliness of the ICRC's order until now. As we noted in *Langen*, the AOPA provides that a person may obtain judicial review only of an issue that was raised before the administrative agency, with two very limited exceptions that are inapplicable here. *See id*. (citing Ind. Code § 4-21.5-5-10). Over the seven months that the ICRC's order was pending, including the five-month period during which it became clear that the ICRC had failed to issue a timely ruling, Roman Marblene stayed silent rather than objecting to and alerting the ICRC to its violation of the applicable procedural law. Therefore, Roman Marblene has waived judicial review of the issue. *See id*. at 623.

[26] In sum, Roman Marblene has not established that the final order of the ICRC was unsupported by substantial evidence, or was arbitrary, capricious, an abuse of discretion, or in excess of its statutory authority. Further, the ICRC's final order is not void. We affirm the order.

Affirmed.

Robb, J., and Bradford, J., concur.